**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMAL GIBBS,

            Plaintiff,

    v.

UNIVERSITY CORRECTIONAL
HEALTHCARE, et al.,

            Defendants.

Civil Action No.: 14-7138 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    Plaintiff Jamal Gibbs ("Plaintiff") brings this action *in forma pauperis* pursuant to 42 U.S.C. § 1983 and other state law claims, alleging violations of his constitutional rights, medical malpractice, and negligence by the various defendants. Presently before the Court are two motions to dismiss, one from Defendant Antonio Campos (ECF No. 94) ("Campos Motion"), and the other from Defendants Abu Ahsan, Christian Carmichael, Carol Gallagher, Donique Ivery, Mary Lang, Pauline Maxwell, Lee Ann Russo, Gladys Tchume, and University Correctional Healthcare (collectively referred to as the "Providers") (ECF No. 107) ("Providers Motion"). The Court previously granted a prior motion to dismiss from Campos, dismissing certain claims without prejudice (Order, Dec. 14, 2015, ECF No. 82), and Plaintiff subsequently filed his Second Amended Complaint ("SAC") to cure the defects identified therein. (ECF No. 93.) The instant motions are directed against the SAC. For the reasons stated below, the Court denies both motions.

I.  **FACTUAL BACKGROUND**

For the purposes of this Opinion, the Court construes all facts alleged by Plaintiff as true, and in the light most favorable to him. This action arises out of Plaintiff's allegations that various defendants failed to provide him with adequate medical services after he broke his hand. (*See* SAC 15-16.) The SAC provides detailed factual allegations regarding the treatment, or the lack thereof, that Plaintiff received for his broken hand, and includes other allegations regarding statements from various defendants about how Plaintiff received inadequate medical services, or at the very least delayed services, which resulted in permanent disabilities. (*See* SAC 5-15.) Plaintiff further alleges that he filed approximately twenty Institutional Remedy Forms that were routinely disregarded by Campos, the Associate Administrator of the prison. (*Id.* at 14.)

Although not attached to the SAC, Plaintiff, in his opposition to the instant motions, attaches some of these remedy forms. (*See* Certification of Keith L. Hovey, Esq., Ex. A to J, ECF No. 111-1.) The Court will consider these exhibits for the purposes of the instant motions. *See Simith v. Pallman*, 420 F. App'x 208, 212 (3d Cir. 2011) (upholding the district court's consideration of documents attached to a motion to dismiss because the documents were referenced in the complaint and integral to plaintiff's claims); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, [the court] may consider . . . any matters incorporated by reference or integral to the claim[.]") (citation and quotation marks omitted); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied on in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). Notably, many of these remedy forms bear Campos's signature.

## II. STANDARD OF REVIEW

Every complaint must comply with the Federal Rules of Civil Procedure's pleading requirements. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). On a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III. DISCUSSION

A plaintiff can pursue a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am.*

*Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-1 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-67 (3d Cir. 2013).

### A. Campos Motion

In his motion, Campos asserts that all claims against him should be dismissed because the factual allegations alleged in the SAC fail to state any claim against him. In light of the aforementioned exhibits, which, as the Court noted, bear his signature and therefore are well-known to him, the Court disagrees with his assertion.

Regarding Plaintiff's federal constitutional claims, Campos argues that the allegations do not establish the knowledge and acquiescence necessary to hold him liable. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 328 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015). Under *Estelle*, in order to state a valid claim for denial of medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle*, 429 U.S. at 106; *Barkes*, 766 F.3d at 321; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). While affirmative action by a supervisory official is not required to state a § 1983 claim, Plaintiff must still show that "a supervisor . . . had knowledge and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316; *see Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). Case law suggests that repeated written complaints to a supervisory defendant of an *ongoing* constitutional violation may be sufficient to establish deliberate indifference by circumstantial evidence. *See, e.g., Cardona v. Warden – MDC Facility*, No. 12-7161, 2013 WL

6446999, at *5 (D.N.J. Dec. 6, 2013) (holding that plaintiff has stated a valid denial of medical services claim against the prison warden because plaintiff alleged an ongoing constitutional violation and alleged that the warden was made aware of the ongoing violation through repeated written requests); *Carter v. Smith*, No. 08-279, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) ("Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y. 2008)).

Here, Plaintiff's allegations and exhibits establish that Campos had actual knowledge of an ongoing denial of adequate medical care and refused to remedy the violations. As the Court stated above, the vast majority of the remedy forms were signed by Campos, hence they unequivocally establish his actual knowledge. Although Campos argues that there are insufficient allegations to show that he acted with deliberate indifference, that is contradicted by the allegations and the exhibits—indeed, the SAC clearly alleges that Campos acted with deliberate indifference. (*See, e.g.*, SAC 14.) These allegations are supported by the exhibits. For example, the exhibits show that Plaintiff filed a remedy form as early as July 16, 2013 (Ex. A, ECF No. 111-1 at 6), and Campos responded to at least one of these forms as early as December 26, 2013 (Ex. B, ECF No. 111-1 at 8). Campos, therefore, had advanced knowledge of Plaintiff's inadequate medical care complaints. Despite his advanced knowledge, Campos, in a response dated March 10, 2014, addressing Plaintiff's complaint that he had not been seen by an orthopedist, stated that "you were scheduled to see ortho [sic] on 1/16/14, but according to the EMR, there was an issue with manpower and DOC was unable to bring you down." (Ex. D, ECF No. 111-1 at 20.) As such, despite knowing at least since December 26, 2013, that Plaintiff suffered an injury as early as July

16, 2013, Campos did not remedy the lack of medical services, but instead partly blamed it on a lack of resources.

The Court, however, cannot find, and Campos has not cited to, decisions holding that the lack of resources is a valid defense to an Eighth Amendment denial of medical services claim. In fact, it would be absurd for this Court to adopt such an excuse as a valid defense to the denial of a constitutional right—constitutional protections would be a farce if the State could simply avoid them by underfunding prisons. As one Supreme Court justice opined:

> [t]here is no reason of comity, judicial restraint, or recognition of expertise for courts to defer to negligent omissions of officials who lack the resources or motivation to operate prisons within limits of decency. Courts must and do recognize the primacy of the legislative and executive authorities in the administration of prisons; however, if the prison authorities do not conform to constitutional minima, the courts are under an obligation to take steps to remedy the violations.

*Rhodes v. Chapman*, 452 U.S. 337, 362 (1981) (J., Brennan, concurring in judgment); *see also Graves v. Arpaio*, 48 F. Supp. 3d 1318, 1325 (D. Ariz. 2014) ("Lack of resources does not justify delay or denial of medical, dental, or mental health care."). Based on the allegations and the exhibits, Campos had knowledge of the violations and deliberately made a statement that can be reasonably inferred as indifference to Plaintiff's medical needs. At the motion to dismiss stage, the Court cannot find that Plaintiff has failed to state a claim upon which relief may be granted on his federal constitutional claims.

Campos further argues that *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004), a case the Court noted in its prior opinion, (*see* Op. 5, Dec. 14, 2015, ECF No. 81), precludes Plaintiff's federal claims against him. As the Court previously stated, under *Spruill*, "Campos may rely on the judgment of a medical professional in his role as a non-medical supervisor." *Id.* Nothing, however, in the allegations or the exhibits shows that Campos relied on a medical professional's

judgment. In none of the responses to Plaintiff's remedy forms did Campos state that he relied on the opinions of medical professionals as to the adequacy of Plaintiff's medical care. In fact, nothing in the record before the Court indicates that Campos actually believed that Plaintiff received proper medical care. Instead, as discussed above, in the only instance where he responded directly to Plaintiff's complaints about inadequate medical care, Campos referred to a lack of resources. That is not reliance on the judgment of a medical professional. In light of the numerous allegations in the SAC that several medical professionals themselves opined Plaintiff *did not* receive proper medical care, (*see, e.g.*, SAC 11 ("Dr. Shakir told Plaintiff that if he would have seen him sooner, he could have properly re-set and pinned the hand so that it would have healed correctly, but now it was too late and he just might be 'screwed.'")), there is simply no support for Campos's argument that he relied on the judgment of any medical professional.

With regard to Plaintiff's state law negligence claim against him, Campos argues that the claim must be dismissed because "Plaintiff . . . fails to plead any specific facts demonstrating that Campos had direct or actual knowledge of Plaintiff's complaints or that he acquiesced in the Medical Defendants' conduct." (Campos's Br. 11, ECF No. 94-1.)[1] To begin, Campos appears to apply the standard for a constitutional denial of medical services claim to Plaintiff's state law negligence claim, a far more stringent standard than is required. *See Allah v. Hayman*, 442 F. App'x 632, 635-36 (3d. Cir. 2011). Negligence does not require actual knowledge. *See Jarrell v. Kaul*, 223 N.J. 294, 320-21 (2015) (finding that basic negligence principles can be satisfied by

---

[1] Campos also argues that Plaintiff fails to state a valid medical malpractice claim against him, with which the Court agrees. *See Komlodi v. Picciano*, 217 N.J. 387, 410 (2014) (to assert a medical malpractice claim, there must first be a patient-doctor relationship between the plaintiff and the defendant-doctor). However, the Court does not construe the SAC as raising a medical malpractice claim against Campos, who was not a medical professional. (*See* SAC 18) ("Defendants violated the standard of care required of *medical professionals*[.]") (emphasis added).

7

proving the tortfeasor knew or *should have known* of a risk of harm). Campos also refers to the Court's statement about reliance on medical professionals as a defense to the negligence claim, but that defense is only applicable to a federal constitutional claim of inadequate medical care. Campos cites to no case law stating that the principle enunciated in *Spruill* is applicable to a general negligence claim, which need not involve a medical decision in the first place. As such, Campos has not satisfied his burden of showing that no state law negligence claim has been presented. Accordingly, the Campos Motion is denied.

### B.  Providers Motion

In their motion, the Providers do not move to dismiss Plaintiff's federal constitutional claims against them. Instead, they seek to dismiss Count IV and Count V of the SAC: the medical malpractice claims and the negligence claims, respectively. The Providers raise two grounds for dismissal: (1) Plaintiff's medical malpractice claims and negligence claims are barred by the applicable statute of limitations; and (2) Plaintiff failed to file an Affidavit of Merit as required by state law. The Court rejects both grounds.

First, the Providers argue that the medical malpractice claims and the negligence claims were not asserted in the original Complaint. The Court agrees that the original Complaint appears to assert only Eighth Amendment claims. (*See, generally*, Compl., ECF No. 1.) It was not until Plaintiff's First Amended Complaint ("FAC"), filed on August 6, 2015, that he asserted his negligence claims, (*see* FAC 10, ECF No. 43), and it was not until the SAC that he asserted his medical malpractice claims (*see* SAC 18).

Under New Jersey law, both personal injury claims and medical malpractice claims (a form of personal injury claim) have a two-year statute of limitations period. N.J.S.A. § 2A:14-2; *Troum v. Newark Beth Israel Med. Ctr.*, 338 N.J. Super. 1, 16 (App. Div. 2001). Since the events alleged

in the original Complaint—indeed, in all of Plaintiff's pleadings—took place on or prior to July 25, 2013, (*see* Compl. 13), the FAC, filed on August 6, 2015, and the SAC, filed on April 6, 2016, were filed outside of the two-year limitations period. As such, the Providers are correct that the amendments to add the negligence and medical malpractice claims were made after the statute of limitations expired.

That, however, is not the end of the inquiry. Federal rules allow "[a]n amendment to a pleading [to] relate[] back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c). "Where an amendment relates back, Rule 15(c) allows a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality." *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012). "[A]pplication of Rule 15(c)(1)(B) normally entails a search for a common core of operative facts in the two pleadings." *Id.* (citation and quotation marks omitted). "[O]nly where the opposing party is given fair notice of the general fact situation and the legal theory upon which the amending party proceeds will relation back be allowed." *Id.*

Here, all of the pleadings rely on the same set of events and facts—Plaintiff's broken hand, the subsequent delay in obtaining x-rays and orthopedic care, the resulting permanent disability, and the lack of physical therapy. (*Cf.* Compl. 9-14; FAC 5-9; SAC 5-15.) Essentially, Plaintiff's amendments simply seek to add the negligence and medical malpractice claims without asserting new facts. Courts have routinely allowed amendments adding state law negligence claims to relate back under Rule 15(c) when plaintiffs have already asserted constitutional claims and relied on no additional facts. *See Renee v. Wetzel*, No. 14-0145, 2016 WL 707486, at *9 (W.D. Pa. Feb. 22, 2016) (allowing amendment of medical negligence claim under Rule 15(c) to a § 1983 action

alleging Eighth Amendment denial of medical services); *see also White v. City of Chicago*, No. 14-3720, 2016 WL 4270152, at *13 (N.D. Ill. Aug. 15, 2016) (allowing amendment of negligent supervision claim under Rule 15(c) to a § 1983 action asserting excessive force); *Mink v. Arizona*, No. 09-2582, 2010 WL 2594355, at *3 (D. Ariz. June 23, 2010) (holding that amendment adding negligence claim to § 1983 action not barred by statute of limitations because of Rule 15(c).) As this Court has opined, "[i]n the context of a claim that the deprivation of medical care amounted to a constitutional violation, proof of such claim would almost certainly prove a case of ordinary state law malpractice[.]" *Baadhio v. Hofacker*, No. 15-2752 (MAS), 2015 WL 6445802, at *2 n.2 (D.N.J. Oct. 23, 2015) (quoting *Taylor v. Plousis*, 101 F. Supp. 2d 255, 263 n.4 (D.N.J. 2000)). It cannot be reasonably argued that the Providers did not have fair notice of possible negligence claims against them. Thus, the Court finds that Plaintiff's state law negligence and malpractice claims relate back to the original Complaint under Rule 15(c) and, therefore, are not time-barred.

With regard to the Providers' Affidavit of Merit defense, that argument is not properly before the Court at this time. "[A] defendant seeking to 'dismiss' an action based on the plaintiff's failure to file a timely [A]ffidavit [of Merit] should file a motion for summary judgment under Rule 56, and not a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withumsmith Brown, P.C.*, 692 F.3d 283, 303 n.13 (3d Cir. 2012). "[T]he [A]ffidavit [of Merit] is not a pleading requirement[.]" *Id.* Accordingly, the Court rejects the Providers' defense on this ground as premature, and the Providers Motion is denied.[2]

---

[2] The Court declines to convert the Providers Motion to that of a summary judgment motion pursuant to Rule 12(d).

## IV.    CONCLUSION

For the reasons set forth above, the Campos Motion and the Providers Motion are **DENIED**.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

<u>Dated:</u>  November 7, 2016